IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JASMINE BRIENO, as personal
representative of the Estate of Eduardo
Rodriguez Melendez, Jr.,

      Plaintiff,

vs.                                                                                                                      Case No. 17-cv-867 SCY/KBM

PACCAR, INC., KIMBLE
MANUFACTURING COMPANY, a
division of Hines Specialty Vehicle Group,
JACKIE D. SIMPSON

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant Paccar, Inc.'s Motion to Dismiss for Lack of Jurisdiction (Doc. 11) and Defendant Kimble Mixer Company d/b/a Hines Specialty Vehicle Group's ("KMC") Motion to Dismiss for Lack of Jurisdiction (Doc. 25). In both Motions, Defendants contend that the present suit should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2). For the reasons discussed below, the Court concludes that it may exercise general personal jurisdiction over Defendant Paccar and accordingly denies its Motion. Finding no basis to exercise personal jurisdiction over Defendant KMC, however, the Court grants its Motion.

**I.    BACKGROUND**

This case arises out of a motor vehicle accident that occurred in Lincoln County, New Mexico on July 29, 2014. *Plaintiff's Complaint*, Doc. 1-1 at 9. Plaintiff alleges that a camper trailer attached to Defendant Simpson's vehicle separated and traveled into the path of decedent Eduardo Melendez's cement truck. Doc. 1-1 at 10. Plaintiff alleges that Decedent Melendez crashed his cement truck when he swerved to avoid the camper trailer. Doc. 1-1 at 10. Plaintiff

alleges that the cement truck tipped onto its side and slid approximately 129 feet. Doc. 1-1 at 10. Plaintiff alleges that this caused the cement mixer drum to detach from the bed of the truck, pin Decedent Melendez in the wreckage, and ultimately resulted in his death. Doc. 1-1 at 10.

Defendant Paccar is a Delaware corporation with its principal place of business in Washington. Doc. 11-1 at 2. Defendant KMC is a Michigan Corporation with its principal place of business in Ohio. Doc. 1 at 2. The cement truck driven by the decedent was composed of parts originating from both Defendants. The cab and chassis was manufactured and assembled by Kenworth Truck Company, an unincorporated division of Defendant Paccar, in Ohio. Doc. 11-1. Kenworth Truck Company then sold the cab and chassis to an independent dealer, MHC Kenworth – Denver. Doc. 11-1. Kimble Mixing Company[1] added the cement mixer components to the cab and chassis. Doc. 25-1. MHC Kenworth - Denver took delivery of the completed vehicle and transported it Colorado. Doc. 25-1. The vehicle was purchased by decedent's employer, Mesa Verde Enterprises, Inc., a New Mexico company, from Defendant KMC in March 2006. Doc. 25-1. At the time of purchase the mixer components were owned by KMC, while MHC Kenworth - Denver held title to cab and chassis. Doc. 25-1. In order to complete the sale, MHC Kenworth – Denver transferred title to Defendant KMC, who then transferred title to Mesa Verde Enterprises. Doc. 25-1. The title transfer occurred in Colorado. Doc. 25-1. In March 2006, MHC Kenworth – Denver delivered the vehicle to Mesa Verde in New Mexico. Doc. 25-1.

Plaintiff initially filed suit against Defendants in New Mexico state court. Doc. 1-1. Defendants removed the case to this Court on August 23, 2017. Doc. 1. Defendant Paccar filed its Motion to Dismiss on August 30, 2017. Doc. 11. Shortly thereafter, Defendant KMC filed its

---

[1] As explained in more detail below, Kimble Mixing Company was eventually acquired by Defendant KMC. Doc. 25-1.

Motion to Dismiss on September 26, 2017. Doc. 25. In response to the Motions, Plaintiff requested that she be allowed to engage in discovery directed toward the jurisdictional issues. *See* Docs. 24, 33. On February 8, 2018, the Court entered an Order permitting limited jurisdictional discovery and requesting supplemental briefing. Doc. 40. Plaintiff filed her supplemental brief on April 6, 2018. Doc. 56. Defendants Paccar and KMC submitted their supplemental briefs on April 20, 2018. Docs. 61, 62. Because the facts underlying the jurisdictional issues are, in large part, unique to each Defendant, the Court will reserve specific discussion of those facts for its analysis.

## II. ANALYSIS

"Federal courts sitting in diversity have personal jurisdiction over nonresident defendants to the extent permitted by the law of the forum." *Benally v. Amon Carter Museum of Western Art*, 858 F.2d 618, 621 (10th Cir. 1988). The plaintiff has the burden of establishing that personal jurisdiction exists. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). "When the evidence presented on the motion to dismiss consists of affidavits and other written materials the plaintiff need only make a prima facie showing." *Bell Helicopter Textron, Inc. v. Heliqwest International, Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004). The plaintiff must show two things: "first, that the exercise of jurisdiction is sanctioned by the state's long-arm statute; and second, that it comports with the due process requirements of the Fourteenth Amendment." *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011). New Mexico's long-arm "statute extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." *Tercero v. Roman Catholic Diocese*, 2002-NMSC-018, ¶ 6, 48 P.3d 50. Thus, the Court "need not conduct a statutory analysis apart from the due process analysis." *Marcus Food Co.*, 671 F.3d at 1166 (internal quotation marks omitted).

"The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (citing *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). "The 'minimum contacts' standard may be met in two ways;" namely, by establishing general or specific jurisdiction. *Id.* "General jurisdiction is based on an out-of-state defendant's continuous and systemic contacts with the forum state…and does not require that the claim be related to those contacts." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008) (internal citation omitted). "Specific jurisdiction, on the other hand, is premised on something of a *quid pro quo*: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Id*.

Because Plaintiff argues separate bases to support the exercise of jurisdiction over Defendants Paccar and KMC, the Court will address these Defendants in turn.

**A. Defendant Paccar**

Plaintiff argues that the Court may exercise either general or specific jurisdiction over Defendant Paccar. As for general jurisdiction, Plaintiff contends that Defendant Paccar consented to general jurisdiction by registering an agent for service of process in New Mexico.[2] In regard to specific jurisdiction, Plaintiff argues that Defendant Paccar has sufficient contacts with New Mexico and that the exercise of personal jurisdiction is fair and reasonable. For the

---

[2] Defendant Paccar contended in supplemental briefing that the Court should not consider this argument because it was raised by Plaintiff in her supplemental brief. Contrary to Defendant Paccar's argument, however, the fact that this issue was raised in supplemental briefing does not preclude consideration of Plaintiff's argument. Defendant Paccar had an opportunity to respond to Plaintiff's argument in its supplemental brief and further had the opportunity to address this argument during the hearing. The Court will accordingly consider Plaintiff's argument regarding general jurisdiction.

reasons explained below, the Court agrees with Plaintiff's first contention and accordingly concludes that the exercise of personal jurisdiction over Defendant Paccar is proper.

Plaintiff's argument is based on a line of authority holding that, in certain circumstances, a foreign corporation may be deemed to have consented to a state's exercise of personal jurisdiction over it if it registers to do business in the state and designates an agent for service of process. *See Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 96 (1917); *Robert Mitchell Furniture Co. v. Selden Breck Constr. Co.*, 257 U.S. 213, 214-16 (1921). Whether a foreign corporation's registration to do business or designate an agent constitutes consent is determined by reference to the state statute governing such issues or, in some instances, case law construing those statutes. *See Robert Mitchell Furniture*, 257 U.S. at 216 ("Unless the state law either expressly or by local construction gives to the appointment a larger scope, we should not construe it to extend to suits in respect of business transacted by the foreign corporation elsewhere…").

The Tenth Circuit has historically followed this practice. In *Budde v. Kentron Hawaii, Ltd.*, the Tenth Circuit held that under Colorado law, a foreign corporation's registration to do business in Colorado constituted consent to general personal jurisdiction. 565 F.2d 1145 (10th Cir. 1977). In so concluding, the court distinguished its decision in *Kentron Hawaii* with an earlier case filed by the same plaintiff in federal district court in New Mexico in which the court held that it did not have general personal jurisdiction. *Id.* at 1148 (citing *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1036 (10th Cir. 1975)). The Tenth Circuit clarified that in its earlier decision neither New Mexico statutory law nor case law provided authority for the exercise of general personal jurisdiction. *See id.* at 1148 (stating that "the result reached in the appeal from the judgment of dismissal by the federal district court in New Mexico was dictated

5

by a lack of New Mexico law on the particular matter."). Because Colorado law did provide such authority, the court in *Kentron Hawaii* determined that the exercise of general personal jurisdiction over the foreign corporation was proper. *Id.* ("We believe Colorado Law exists which dictates a result different from the one reached by us in the New Mexico case.").

Subsequent to the Tenth Circuit's decisions in the *Budde* cases, the New Mexico Court of Appeals issued its decision in *Werner v. Wal-Mart Stores, Inc.*, 1993-NMCA-112, 861 P.2d 270. In *Werner*, the court reviewed the New Mexico Business Corporation Act, §§ 53-17-1 *et seq.*, and determined that the legislature intended Section 53-17-11 to grant authority for state courts to exercise personal jurisdiction over foreign corporations authorized to transact business in New Mexico. 1993-NMCA-112, ¶ 11. In so holding, the court read Section 53-17-11 in conjunction with Section 53-17-2 which provides that a foreign corporation registered to do business in New Mexico "is subject to the same duties, restrictions, penalties and liabilities now or hereafter imposed upon a domestic corporation of like character." The court accordingly concluded that because the "legislative intent expressed in Section 53-17-2 appears to have been to equalize foreign and domestic corporations operating with New Mexico," a foreign corporation's act of registering to do business in New Mexico constituted consent to New Mexico jurisdiction. *Werner*, 1993-NMCA-112, ¶ 10.

As indicated by *Fireman's Fund Ins. Co. v. Thyssen Mining Construction of Canada, Ltd.*, *Werner* supplied the authority the Tenth Circuit found lacking when it decided *Budde v. Ling-Temco-Vought, Inc.* nearly twenty years previously. Civ. No. 10-401 MV/LFG, 2011 WL 13085934, *3 (D.N.M. July 29, 2011) *vacated on other grounds by Fireman's Fund Insurance Company v. Thyssen Mining Construction of Canada, Ltd.*, 703 F.3d 488 (10th Cir. 2012). The Court in *Fireman's Fund* explained that post-*Werner* "New Mexico case law appears to allow

general personal jurisdiction over foreign corporations that are registered to do business within the state, that actually do business within the state, and that are served through their agent for service of process within the state[.]" *Id*. at *2. The court accordingly applied New Mexico law and concluded that it could exercise personal jurisdiction over a defendant who was registered to do business in New Mexico and whose registered agent was served with process in New Mexico. *Id.* at *3.

Defendant Paccar acknowledges *Werner* but contends that *Werner* was decided approximately three years after Paccar registered an agent in New Mexico. Defendant Paccar argues that New Mexico's Business Corporation Act provided no express notice to it that registering an agent would constitute consent to general jurisdiction. Defendant Paccar therefore argues that there has been no voluntary and knowing consent to general jurisdiction in New Mexico.

In *Robert Mitchell Furniture*, however, the United States Supreme Court stated that "when a foreign corporation appoints [an agent] as required by statute it takes the risk of the construction that will be put upon the statute and the scope of the agency by the State Court." 257 U.S. at 215-16 (citing *Pennsylvania Fire*, 243 U.S. at 96). Consistent with *Robert Mitchell Furniture*, the court in *In re Syngenta AG MIR 162 Corn Litigation*, sua sponte raised and rejected an argument similar to the one Defendant Paccar now makes. Civ. No. 14-md-2591, 2016 WL 1047996, n.3 (D. Kan. March 11, 2016) ("Syngenta has not argued that consent given prior to the Kansas Supreme Court's opinion in *Merriman* should not be given effect. At any rate, the United States Supreme Court noted in *Robert Mitchell Furniture* that a registering corporation assumes the risk of a subsequent state court construction of the statute."). Based on

7

these cases, the Court concludes that whether Defendant Paccar registered an agent prior to the *Werner* decision is immaterial to the Court's decision.

This, however, does not end the analysis. Defendant Paccar also argues that construing its registration of an agent for service of process as consent to general personal jurisdiction contravenes recent Supreme Court decisions restricting the scope of general personal jurisdiction. Defendant Paccar bases this argument on the Second Circuit's decision in *Brown v. Lockheed Martin Corp.*, which indicated in dicta that it was unlikely that registration of an agent could constitute consent to general jurisdiction following *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) and *Daimler AG v. Bauman*, 571 U.S. 117 (2014). 814 F.3d 619 (2d 2016). More specifically, the *Brown* court stated

> In any event, we can say that the analysis that now governs general jurisdiction over foreign corporations—the Supreme Court's analysis having moved from the "minimum contacts" review described in *International Shoe* to the more demanding "essentially at home" test enunciated in *Goodyear* and *Daimler*—suggests that federal due process rights likely constrain an interpretation that transforms a run-of-the-mill registration and appointment statute into a corporate "consent"—perhaps unwitting—to the exercise of general jurisdiction by state courts, particularly in circumstances where the state's interests seem limited.

*Brown*, 814 F.3d at 637. Defendant Paccar therefore contends that construing its registration of an agent in New Mexico as consent to general personal jurisdiction likely violates due process in the wake of *Daimler* and *Goodyear*.

The *Brown* court's prediction of how the law will develop, however, carries less force than the above cited cases that address the current state of the law in the Tenth Circuit. The *Brown* court extrapolated from *Daimler* and *Goodyear* that the Supreme Court would ultimately overrule previous case law and determine that registering to do business in a state cannot constitute consent to general jurisdiction. But the fact remains that the Supreme Court has not taken that step thus far. *See In re Syngenta AG MIR 162 Corn Litigation*, MDL No. 2591, 2016

WL 2866166 (D. Kan. May 16, 2016) (explaining that *Daimler* did not overrule *Pennsylvania Fire* and that the Supreme Court has continued to sanction the "viability of jurisdiction through consent"). Regardless of how persuasive the Second Circuit's analysis in *Brown* might be, the Court is not free to disregard binding Tenth Circuit precedent in favor of dicta from a sister circuit. The Tenth Circuit in *Kentron Hawaii* recognized that case law from a state which interprets that state's foreign corporation process statutes as providing for jurisdiction over registered corporations is valid. 565 F.2d at 1149. Given that the New Mexico Court of Appeals has interpreted New Mexico's foreign corporation process statutes as providing for jurisdiction over registered corporations, *Brown* does not provide this Court with an avenue to reject Plaintiff's argument. The Court accordingly rejects Defendant Paccar's contention and concludes that Defendant Paccar is appropriately subject to the jurisdiction of this Court.

**B. DEFENDANT KMC**

As opposed to Defendant Paccar, Plaintiff's only asserted basis for personal jurisdiction against Defendant KMC is specific personal jurisdiction. Doc. 33 at 1. Plaintiff alleges that Defendant KMC "has substantial contacts with the State of New Mexico, including, but not limited to, selling, advertising, servicing products that it manufactures that are specifically targeted for New Mexico consumers and users." *Plaintiff's Complaint*, Doc. 1-1 at ¶ 7. Further, Defendant KMC "placed this particular product into the stream of commerce with the expectation or certainly the awareness that such product would reach the State of New Mexico." *Id.*

The minimum contacts inquiry for specific personal jurisdiction "encompasses two distinct requirements: (i) that the defendant must have purposefully directed its activities at residents of the forum state, and (ii) that the plaintiff's injuries must arise out of [the] defendant's

9

forum-related activities." *Old Republic Insurance Company v. Continental Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (internal quotation marks and citation omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). "The purposeful direction requirement 'ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts[.]'" *Old Republic*, 877 F.3d at 904-05 (10th Cir. 2017) (citing *Burger King*, 471 U.S. at 475). The actions by the defendant itself must have created the substantial connection with the forum. *See OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1092 (10th Cir. 1998) (citing *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 109 (1987)). "Thus, courts have been unwilling to allow states to assert personal jurisdiction over foreign defendants where the defendant's presence in the forum arose from the unilateral acts of someone other than the defendant." *Id*. at 1092; *see also Burger King*, 471 U.S. at 475 (stating that the purposeful availment requirement ensures that jurisdiction will not be established on the basis of the "unilateral activity of another party or a third person."). Further, "[m]ere foreseeability of causing injury in another state is insufficient to establish purposeful direction." *Old Republic*, 877 F.3d at 905. Instead, a plaintiff must "establish…not only that [the defendant] foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that [the defendant] *undertook intentional actions that were expressly aimed at the forum state*." *Dudnikov*, 514 F.3d at 1077.

Under the "arising out of" prong, the Court must determine whether there is an "affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State." *Old Republic*, 877 F.3d at 909 (internal quotation marks and citation omitted). "When there is no such connection, specific jurisdiction

is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* (internal quotation marks and citation omitted).

With that background in mind, the Court turns to the underlying jurisdictional facts in regard to Defendant KMC. As noted above, Defendant KMC is incorporated in Michigan with its principal place of business in Ohio. Doc. 25-1. Defendant KMC was formed in 2015 after the merger of Kimble Manufacturing Company with another company. Kimble Manufacturing Company, in turn, acquired the "original" Kimble Mixing Company in an asset sale in January 2006. Doc. 25-1. Defendant KMC avers that it was Kimble Manufacturing Company that manufactured, designed, and, in October 2005, assembled the cement mixer components on the vehicle at issue. None of these activities occurred in New Mexico.[3]

Upon assembly of the vehicle's mixing components, the vehicle was delivered to MHC-Kenworth – Denver. Doc. 25-1 at ¶ 13. At that time, Defendant KMC owned the mixing components on the vehicle by virtue of the asset sale while MHC Kenworth – Denver held title to the cab and chassis. Doc. 25-1 at ¶ 16. In February 2006, Defendant KMC and Mesa Verde Enterprises exchanged communications regarding the specifications of the vehicle and price quotes. Doc. 56-7, 56-8. There is no evidence before the Court that Defendant KMC directly solicited Mesa Verde's business or initiated this contact. After providing Mesa Verde two quotes for the vehicle, the parties agreed to the sale. On March 13, 2006, Defendant KMC invoiced Mesa Verde for the entire price of the vehicle. Doc. 56-9. Upon payment by Mesa Verde, Defendant KMC remitted payment for the cab and chassis portion to MHC Kenworth – Denver.

---

[3] Defendant KMC initially contended in briefing that "Original Kimble's" actions should not be imputed to Defendant KMC for purposes of determining personal jurisdiction. In supplemental briefing, Defendant KMC contended that Plaintiff cannot establish personal jurisdiction even by imputing "Original Kimble's" actions to Defendant KMC. Because the Court ultimately determines that personal jurisdiction does not exist regardless of whether Original Kimble's actions are imputed to Defendant KMC, the Court will not recognize a distinction between the entities for purposes of its analysis.

11

Doc. 25-1 at ¶ 16. MHC Kenworth – Denver transferred title to Defendant KMC who then transferred title to Mesa Verde in March 2006. Doc. 25-1. MHC Kenworth – Denver subsequently delivered the vehicle from Denver to New Mexico. Doc. 25-1 at ¶ 18.

According to Defendant KMC vice-president Phil Keegan's affidavit, Defendant KMC does not own, operate, or control a business location or dealership in the State of New Mexico. Doc. 25-1 at ¶ 5. Nor does Defendant KMC have any offices, manufacturing plants, employees, officers or directors in the state. Doc. 25-1 at ¶ 5. Further, Defendant KMC does not "perform any advertising or marketing in the state of New Mexico, or directed specifically at the state of New Mexico." Doc. 25-1 at ¶ 5. Consistent with this averment, Defendant KMC responded to an interrogatory regarding whether it considered New Mexico part of its nationwide market by stating, "[Defendant KMC] did not target or reach out specifically or intentionally to a New Mexico market" although "[Defendant KMC] considered New Mexico and every other state in the United States to be locations in which future customers may reside." Doc. 56-6 at 1. Defendant KMC further clarified that although it did not specifically advertise in New Mexico, it "did not make efforts to exclude or prevent advertising efforts from reaching New Mexico residents." Doc. 56-6 at 2.

In terms of Defendant KMC's business contacts with New Mexico, Plaintiff cites evidence that between January 2006 and December 2015, Defendant KMC sold or delivered twenty vehicles to New Mexico totaling sales of $1,427,985.[4] Defendant KMC similarly conducted an additional $74,477 in gross sales of aftermarket or replacement parts to New Mexico residents or businesses during this time. In January 2006, Defendant KMC's customer

---

[4] In support of this figure, Plaintiff cites to Plaintiff's Exhibit 18. However, no such exhibit was attached. Defendant, however, does not dispute this amount. The Court will accordingly assume, for purposes of this Motion, that this figure is accurate.

12

phone list contained four New Mexico businesses, none of which, however, were Mesa Verde. Doc. 56-6. It further appears that at some point between 2006 and 2016, a KMC employee visited Mesa Verde in New Mexico. Doc. 56-9. While the date and duration of the visit is unknown, Defendant KMC represented that the visit was not for purposes of service or warranty of a vehicle. Doc. 56-9. Finally, Plaintiff attaches internal email communications between employees at Defendant KMC regarding complaints Mesa Verde was having with mixing components on a model number 2200 unit. Doc. 56-10.

Turning to the parties' arguments, the Court first clarifies that, to the extent Plaintiff's arguments are based on the stream of commerce theory, the facts in this case do not neatly fit into the traditional stream of commerce framework. The underlying premise of the stream of commerce theory is that a forum state "does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum [s]tate." *World-Wide Volkswagon*, 444 U.S. at 297-98. This aspect of personal jurisdiction jurisprudence was developed to address situations in which a manufacturer ostensibly delivers its products to a forum state while insulating itself from the jurisdictional reach of the forum state by the use of an intermediary distribution chain. *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 117 (1987) (Brennan, J., concurring) ("The stream of commerce refers…to the regular and anticipated flow of products from manufacture to distribution to retail sale."); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 926 (2011) ("The stream of commerce metaphor has been invoked…in products liability cases in which the product has traveled through an extensive chain of distribution before reaching the ultimate consumer.").

In the present case, Plaintiff purchased the vehicle at issue directly from Defendant KMC in Colorado. That is, Defendant KMC had not released this particular product into the stream of commerce with the expectation that, through intermediary distributors, it would reach various quarters of a nationwide market. Instead, Defendant KMC participated directly with Mesa Verde in the business transaction that ultimately led to the introduction of the vehicle into New Mexico. *See World-wide Volkswagon*, 444 U.S. at 297 (distinguishing the "stream of commerce" theory where the sale arises "from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its products in other states" with an "isolated" sale). This is distinguishable from instances in which a "defendant acted by placing a product in the stream of commerce, and the stream eventually swept defendant's product into the forum state." *Asahi Metal Industry*, 480 U.S. at 110. That is to say, the product at issue never reached the forum state by a chain of distribution but instead by the direct purchase of the product outside the forum by a forum resident. Regardless, whether the Court uses the phrase "stream of commerce" or not, the personal jurisdiction determination turns on (a) whether "the defendant 'purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws,'" *J. McIntyre Machinery, Ltd v. Nicastro*, 564 U.S. 873, 877 (2011) (quoting *Hanson v. Denckla*, 357 U.S. 235 (1958)) and (b) whether the plaintiff's injuries arose out of the defendant's forum related activities. *Old Republic*, 877 F.3d at 904.

The Court further clarifies the evidence relevant to its analysis. Plaintiff proffers evidence regarding Defendant KMC's contacts with New Mexico that include approximately $1.5 million in sales as well as the inclusion of at least four New Mexico businesses on a customer phone list. Even assuming this evidence could establish "purposeful availment," the Court concludes that Plaintiff cannot show that Plaintiff's injuries arose out of these forum-

14

related activities by Defendant KMC. *See Old Republic*, 877 F.3d at 908 (recognizing that regularly occurring sales of a product in a forum does not justify the exercise of jurisdiction over a claim unrelated to those sales."). As the Tenth Circuit explained in *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, the "arising out of" requirement is not met "when the plaintiff would have suffered the same injury even if none of the defendant's forum contacts had taken place." 102 F.3d 453, 456-57 (10th Cir. 1996) (internal alteration and quotation marks omitted). The evidence before the Court indicates that Plaintiff negotiated with an agent of Defendant KMC residing in Colorado and that the sale was ultimately consummated in Colorado. Plaintiff highlights no evidence that this sale was in any way connected to Defendant KMC's previous sales in New Mexico. *See Bristol-Myers Squib v. Superior Court of California San Francisco County*, 137 S.Ct. 1773, 1781 (2017) (stating that there must be a connection between the forum and the underlying controversy and where such connection is lacking "specific jurisdiction is lacking *regardless of the extent of a defendant's unconnected activities in the State*" (emphasis added)). Indeed, the fact that Mesa Verde *does not* appear on the customer list is indicative of the unrelated nature of Defendant KMC's forum-related activities and Plaintiff's claims. For similar reasons, the Court finds the evidence regarding a visit to Mesa Verde by an employee of Defendant KMC and the internal KMC email exchanges unrelated to Plaintiff's claims. The email exchange did not concern the vehicle at issue. Further, so little is known about the employee's visit— such as its date, purpose or duration—that it is difficult to surmise its connection to Plaintiff's claims. The Court accordingly finds this evidence does not support the exercise of specific personal jurisdiction over Defendant KMC.

The Court is similarly unpersuaded by Plaintiff's representation that Defendant KMC targeted New Mexico as part of nationwide marketing campaign. The evidence before the Court

simply does not support this assertion. As noted above, Defendant KMC's interrogatory response stated that it "did not target or reach out specifically or intentionally to a New Mexico market." Doc. 56-6 at 1. Plaintiff's assertion is premised on Defendant KMC's further statements that it "considered New Mexico and every other state in the United States to be locations in which future customers may reside" and "did not make efforts to exclude or prevent advertising efforts from reaching New Mexico residents." Doc. 56-6 at 1. These statements, however, do not refute Defendant KMC's statement that it did not specifically or intentionally target the New Mexico market. *See Dudnikov*, 514 F.3d at 1077 (stating that a plaintiff must show that "the defendants undertook *intentional actions that were expressly aimed at that forum state*"). Vague statements indicating that Defendant KMC understood that potential customers may reside in New Mexico or Plaintiff's attempt to manufacture a duty on behalf Defendant KMC to ensure marketing materials were excluded or otherwise never accessed by forum residents is insufficient.

What is relevant to the Court's analysis, however, are facts surrounding the negotiation and sale of the specific vehicle at issue to Mesa Verde. To briefly reiterate, Mesa Verde, a New Mexico business, purchased a vehicle located in Colorado from Defendant KMC. Broadly stated, Plaintiff's contention on this point is that Defendant KMC purposefully directed its activities to New Mexico by directly selling a vehicle to a New Mexico business. Plaintiff points out that Defendant KMC provided Mesa Verde two price quotes for the vehicle, the second of which Mesa Verde accepted. Subsequently, KMC invoiced Mesa Verde for the vehicle, signed receipt for delivery of the vehicle to Mesa Verde, issued to Mesa Verde a statement of origin for the vehicle, and signed a warranty for the benefit of Mesa Verde. Plaintiff highlights that these documents Defendant KMC signed routinely contained Mesa Verde's address, thereby proving

16

that Defendant KMC knew it was dealing directly with a New Mexico business. Defendant, on the other hand, emphasizes that all of these actions took place in Colorado and were "reflexive actions" driven by Mesa Verde's interest and ultimate purchase of the vehicle.

While the Court agrees with Plaintiff that it was foreseeable to Defendant KMC that the vehicle would end up in New Mexico by virtue of its business dealings with Mesa Verde, "mere foreseeability of causing injury in another state is insufficient to establish purposeful direction." *Old Republic*, 877 F.3d at 905; *see also Bell Helicopter*, 385 F.3d at 1295 (stating that the foreseeability relevant to the minimum contacts analysis in products liability cases is not the "mere likelihood that a product will find its way into the forum" but instead that the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into Court there."). Instead, the plaintiff must establish that the defendant "undertook intentional actions that were expressly aimed at that forum state." *Dudnikov*, 514 F.3d 1077. This standard is not satisfied where the defendant's presence in the forum state is the result "of the unilateral activity of another party or third person." *Burger King*, 471 U.S. at 475.

In the present case, there is no evidence before the Court that Defendant KMC either solicited Mesa Verde's business or initiated the sale. Instead, the reasonable inference from the evidence is that Defendant KMC provided price quotes to Mesa Verde in response to Mesa Verde's interest in the vehicle. The present case is accordingly similar to *Espat v. Wissenback*, Civ. No. 14-1054 SMV/LAM, Doc. 18 (D.N.M. Feb. 27. 2015).[5] In *Espat*, the plaintiffs, New

---

[5] The Court's decision relies upon *Espat* and other unpublished opinions in analyzing the issues presented. A court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. *See* 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court finds that these unpublished opinions have persuasive value with respect to a material issue, and will assist my analyses and the disposition of this case.

Mexico residents, contacted a seller of a vehicle in Nevada in response to an online advertisement. *Id.* at 2. The parties exchanged multiple communications, via telephone and email, during the negotiations process through which it became clear that the plaintiffs were New Mexico residents and intended to use the vehicle in New Mexico. *Id.* at 3. It further appears that the defendant assisted in arranging for delivery of the vehicle to New Mexico, although the full extent of the defendant's involvement was in dispute. *Id.* at 3-4. The court in *Espat* rejected the plaintiffs' argument that the purposeful direction requirement was met by the defendant's sale of the vehicle despite it knowing that the vehicle would be used in New Mexico because the single transaction "involved no continuing commitments and created no substantial connection between [the d]efendants and New Mexico." *Id.* at 12. The court further found the defendant's communications with the plaintiff did not establish purposeful direction. *Id.* at 14. In so concluding, the court emphasized that the plaintiffs initiated the transaction and that the defendant communicated with the plaintiffs in response to the inquiries regarding the vehicle. *Id.*

The Court agrees with the analysis in *Espat* that communications with a forum purchaser do not establish purposeful direction where the defendant did not solicit or otherwise initiate the purchaser's business. *See id.* at 13; *see also Bell Helicopter*, 385 F.3d at 1297 (stating that even where the unilateral acts of another party are the basis of a defendant's presence in the forum, solicitation by the defendant provides some evidence suggesting purposeful availment). The sale of the vehicle constituted a lone transaction consummated in Colorado with all of Defendant's KMC's activities occurring outside New Mexico. Accordingly, Defendant KMC engaged in no "significant activities" within New Mexico constituting purposeful availment of the privilege of

conducting business there. *See Old Republic*, 877 F.3d 905. As such, the Court concludes that the exercise of personal jurisdiction over Defendant KMC would be improper.

### III. CONCLUSION

For the foregoing reasons, the Court therefore orders that:

- Defendant Paccar's Motion to Dismiss for Lack of Jurisdiction (Doc. 11) is DENIED.

- Defendant KMC's Motion to Dismiss for Lack of Jurisdiction (Doc. 25) is GRANTED.

**IT IS SO ORDERED.**

_____
UNITED STATES MAGISTRATE JUDGE
Sitting by Consent